UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TEPEZZA MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case Nos. 1:23-cv-03568<br>1:23-cv-02714<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Defendant Horizon Therapeutics USA Inc. ("Horizon") moves to dismiss plaintiff Cherl Merriweather's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 186 (Case No. 1:23-cv-03568), R. 18 (Case No. 1:23-cv-02714). For the following reasons, that motion is granted.

**Legal Standard**

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

Horizon manufactures, promotes, and sells Tepezza, a biologic that treats thyroid eye disease ("TED"). R. 18 (Case No. 1:23-cv-02714) ("FAC") ¶ 2. Horizon is

1

incorporated in Delaware and has its principal place of business in Deerfield, Illinois. *Id.* ¶¶ 14, 17. Horizon "transacted and conducted business" within Michigan and "derived substantial revenue from goods and products disseminated and used throughout Michigan." *Id.* ¶ 18. Further, "[a]t all relevant times, Horizon was . . . involved in the manufacturing, research, development, marketing, distribution, sale, and release for use to the general public of pharmaceuticals, including Tepezza, in Michigan." *Id.* ¶ 20.

Merriweather is a Michigan resident. *Id.* ¶ 9. She was diagnosed with TED in Michigan and received a series of Tepezza infusions between September 2022 and May 2023 in Michigan. *Id.* ¶¶ 9–10. She alleges those infusions caused her to suffer permanent hearing loss and/or tinnitus. *Id.* ¶ 12. On May 1, 2023, Merriweather sued Horizon in the Northern District of Illinois, asserting claims of failure to warn and design defect under both strict liability and negligence theories. She also seeks punitive damages. In June 2023, the Judicial Panel on Multidistrict Litigation centralized her case and others into the *Tepezza* MDL. Horizon selected Merriweather's case as one of the twelve Initial Bellwether Discovery cases. R. 153 (Case No. 1:23-cv-03568).

## Discussion

Horizon moves to dismiss on choice-of-law grounds. Because Merriweather filed this diversity suit in Illinois, Illinois choice-of-law rules apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021). Illinois law sets forth a three-part inquiry, wherein the Court asks: (1) whether there is an outcome-determinative conflict; (2) whether Illinois

choice-of-law rules instruct that a presumptive choice applies in this suit; and (3) whether under Sections 6 and 145 of the Restatement (Second) of Conflict of Laws the presumptive choice should not apply because another state has a more significant relationship to this case. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 155 (2007).

A.  Conflict of Laws

A choice-of-law analysis is only required if the application of one state's laws over the other "will make a difference in the outcome." *Board of Forensic Document Examiners, Inc. v. Am. Bar Assoc.*, 922 F.3d 827, 831 (7th Cir. 2019). Here, the parties agree that there is outcome-determinative conflict between Michigan and Illinois law. Michigan law in effect at the time of Merriweather's alleged injury and the filing of her complaint bars "a product liability action" against a manufacturer of an FDA-approved drug. Mich. Comp. Laws Ann. § 600.2946(5) (repealed Feb. 13, 2024).[1] In contrast, Illinois has no analogous statute. Thus, the viability of Merriweather's claims depends on whether Michigan or Illinois law applies.

B.  Presumptive Choice

Under Illinois law, where a conflict exists "in an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship." *Townsend*, 227 Ill.2d at 165 (citation omitted). This amounts to a "*strong* presumption . . . .that the law of the place of injury . . . governs

---

[1] While the statute was repealed in February 2024, Merriweather agrees that if Michigan law applies to her case, the prior version of the statute applies to her claims.

3

the substantive issues." *Id.* at 166 (emphasis in original). In this case, Merriweather received Tepezza infusions in Michigan and suffered her hearing-related injuries in her home state. As such, there is a presumption that Michigan law applies.

C. Sections 6 and 145

The strong presumption in favor of the law of the place of injury "may be overcome only by showing a *more* or *greater* significant relationship to another state." *Id.* at 163 (emphasis in original). To determine whether Illinois has a more significant relationship to Merriweather's suit than Michigan does, the Court considers the policy principles and contacts outlined in Sections 6 and 145 of the Restatement (Second) of Conflict of Laws.

1. Section 145 Factors

Section 145 directs the Court to consider four contacts: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* at 160 (citing Restatement (Second) of Conflict of Laws § 145(2), at 414 (1971)).

The first factor—the place of the injury—favors Michigan. As previously discussed, Merriweather's injury occurred in Michigan. Michigan is the place where Merriweather resides and where she was prescribed and administered Tepezza. *Id.* at 168 (holding that first section 145 factor favored Michigan where the plaintiff lived in Michigan and purchased and used the injurious tractor in Michigan). Merriweather nonetheless contends that this factor is neutral because the "national

4

reach of the marketing and distribution" of Horizon's products "dilute[s]" the significance of the place of injury. R. 21 (Case No. 23-cv-02714) at 9. She relies on *In re Bendectin Litig.*, 857 F.2d 290, 295 (6th Cir. 1988), a products liability action against the manufacturer of a drug taken by pregnant women for morning sickness. Conducting a choice-of-law analysis, the Sixth Circuit reasoned that the defendant's home state from which it "manufactured and distributed a uniform drug internationally" and "issued a uniform set of warnings and instructions for use" was "more significant" than where the injured plaintiff lived. *Id.* at 305.

But *Bendectin* differs materially from the case at bar. First, in that case, it was not clear where the plaintiff's injury from ingesting the drug occurred, *id.* at 304, whereas here, Merriweather plainly alleges that she was prescribed and received Tepezza infusions in Michigan. There is no allegation that Merriweather was injured in any state except Michigan. Second, and more critically, the Sixth Circuit applied Ohio choice-of-law rules, which, unlike Illinois' rules, do not employ the "strong presumption" in favor of the state of injury. *Id.* (directing courts applying Ohio choice-of-law rules to first consider which state has the most significant relationship, and only if not determinable, use the law of the place of injury). Horizon's national reach does not neutralize the first section 145 factor. *See In re Abbott Lab'ys, et al. Preterm Infant Nutrition Prod. Liab. Litig.*, No. 22 C 1951, 2023 WL 4273701, at *4 (N.D. Ill. June 29, 2023) (rejecting identical "national reach" argument and holding that first factor favored state where plaintiff lived and was fed the injurious infant formula).

5

The second factor—the location of the wrongful conduct—is neutral. This factor includes "all conduct from any source contributing to the injury." *Townsend*, 227 Ill.2d at 169. Certainly, some of the contributing conduct occurred in Illinois. Merriweather alleges that Horizon manufactured, promoted, and sold Tepezza from its headquarters in Illinois. FAC ¶¶ 2, 14, 17. But other contributing conduct occurred in Michigan. That is where a physician diagnosed Merriweather with TED, prescribed her Tepezza, and administered Tepezza to her. With contributing conduct across multiple states, this factor does not weigh against the presumption. *See Paulsen v. Abbott Lab'ys*, No. 15-cv-4144, 2018 WL 1508532, at *12 (N.D. Ill. Mar. 27, 2018) (finding second factor was "not clear" where defendants developed, tested, and marketed defective drug in Illinois but plaintiff lived and was injected with the drug in Georgia); *see also In re Abbott Lab'ys*, 2023 WL 4273701, at *4 (finding that manufacturer's location in Illinois did not "strongly favor the application of Illinois law" where the decision to administer the defective infant formula occurred in New Jersey and plaintiffs and their providers were likely exposed to product advertising in New Jersey).

The third factor—domicile, residence, place of incorporation, and place of business of the parties—is also neutral because Merriweather resides in Michigan, while Horizon is incorporated in Delaware with its principal place of business in Illinois. *See Townsend*, 227 Ill.2d at 169 (finding third factor a "wash" where plaintiff resided in Michigan and defendant was headquartered in Illinois); *Paulsen*, 2018 WL

6

1508532, at *4 (finding third factor did "not point strongly to any one state" where plaintiff was a Georgia resident and defendant company was an Illinois resident).

The fourth factor—the place where the relationship between the parties is centered—favors Michigan. Merriweather's relationship with Horizon arose from her treatment with Tepezza in Michigan. *See Townsend*, 227 Ill.2d at 169 (finding relationship centered in Michigan where plaintiff purchased injurious lawn mower at defendant's store in Michigan); *Paulsen*, 2018 WL 1508532, at *12 (finding relationship centered in Georgia because that was where the plaintiff was injected with the defective drug). Merriweather argues that the parties' relationship is centered where the product was designed. But none of the cases that she relies on in support of that proposition applied Illinois choice-of-law rules. *See* R. 21 (Case No. 23-cv-02714) at 11–12 (citing cases). Taken together, the Section 145 factors do not show that this case has a more significant relationship to Illinois than Michigan.

    2.    Section 6 Factors

Section 6 directs consideration of seven policy factors. However, the Court need not conduct a detailed analysis of all seven factors because some factors are "implicated only minimally" in personal injury actions. *Townsend*, 227 Ill.2d at 169–70. As in *Townsend*, the most important factors are the relevant policies and interests of Michigan and Illinois. *Id.*

Merriweather argues that Illinois' interest in regulating its corporate citizens and protecting consumers exceeds Michigan's interest in enforcing the now-repealed immunity statute (§ 600.2946(5)), which it characterizes as "an exercise in corporate

7

protectionism." R. 196 at 15. As an initial matter, one of the policy concerns underlying § 600.2946(5)) was "the desire to increase access to affordable prescription drugs for Michigan residents," i.e., consumers. *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 775 (N.J. 2007). In any case, "pro-consumer" and "pro-business" labels do not further the analysis. *Townsend*, 227 Ill.2d at 171. "[T]ort rules which limit liability are entitled to the same consideration when determining choice-of-law issues as rules that impose liability." *Id.* The fact that Michigan law is less favorable to Merriweather is not an appropriate policy consideration. *Paulsen*, 2018 WL 1508532, at *13.

The proper focus is whether the repeal of § 600.2946(5) suggests that Michigan no longer has any interest in its enforcement. Merriweather argues that Michigan disclaimed any interest in enforcing § 600.2946(5) by repealing it. Horizon responds that if the Michigan legislature intended to abandon its interest in enforcing the statute, it would have made the repeal retroactive. It is unclear whether the Michigan legislature could have made the statute retroactive, even if it wanted to. *See Buhl v. City of Oak Park*, 968 N.W.2d 348, 354 (Mich. 2021) (statute cannot be retroactively applied where it "would effectively rewrite history as to the duty defendant owed plaintiff").

But even if the Court assumes that Illinois' interest in regulating Horizon and protecting consumers of goods from Illinois corporations is greater than Michigan's interest in enforcing a repealed statute, that difference would not be sufficient to overcome the presumption that Michigan law should govern the issues in this case.

8

*Cf. Townsend*, 227 Ill.2d at 170 (Illinois' interest in furthering its policy of regulating corporate conduct was not "so pivotal as to overcome the presumption that Michigan, as the state where the injury occurred, is the state with the most significant relationship."). *Maher & Assocs., Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69 (1994), which preceded *Townsend* and involved the review of a forum selection clause without any consideration of the section 6 factors, does not suggest otherwise.

Merriweather also claims that Illinois' interest in corporate regulation and consumer protection requires the Court to view Horizon's residency and conduct in Illinois as the most important factors in the choice-of-law analysis, rather than the place of injury. R. 21 (Case No. 23-cv-02714) at 16. Yet Merriweather cites no case where a court conducted the Illinois choice-of-law analysis in that way. The Court follows the choice-of-law analysis outlined in *Townsend*. Where the only factor that supports Illinois' relationship with the case is its comparative interest in enforcing its laws, the Court cannot conclude that Illinois has a more significant relationship than the state where the injury occurred. Therefore, Michigan law applies and requires dismissal of Merriweather's complaint.

D. Selection of Replacement Bellwether Case

Horizon argues that the Court should allow it to select a replacement bellwether discovery case. Horizon accuses the Plaintiffs' Leadership Committee ("PLC") of deliberately refusing to voluntarily dismiss a "clearly non-viable case" in order to preclude Horizon from selecting another bellwether consistent with Case Management Order No. 3 ("CMO 3"). R. 23 (Case No. 23-cv-02714) at 9. But CMO 3 does not say that if the PLC had voluntarily dismissed Merriweather's suit, Horizon

9

would have been entitled to pick another bellwether case. Section III.E provides that "[i]n the event that a case is voluntarily dismissed with prejudice before the selection of Initial Bellwether Trial Cases, the Court may at its discretion allow the selection of a replacement case by *the Defendant or Plaintiff*, depending upon the circumstances of the dismissal, to ensure the integrity of the bellwether process." R. 69 (Case No. 1:23-cv-03568) at p. 4 (emphasis added). Moreover, Section V clearly states that if a bellwether case is resolved on the merits under Rule 12, it "shall not be replaced." *Id*. That is what the parties agreed to and that is the proper course here. Horizon's request to choose another bellwether case is denied. The case will proceed with the eleven remaining Initial Bellwether Discovery cases, pending the Court's ruling on the other motions to dismiss.

## Conclusion

For the foregoing reasons, the Court grants Horizon's motion to dismiss Merriweather's complaint and denies Horizon's request to choose another bellwether discovery case.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: October 28, 2024